IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY A. ROSS, DPM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-09-3626 |
| v. | § | |
| | § | |
| BANK OF AMERICA N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

**I.   Background**

In this suit, Dr. Jeffrey A. Ross, a Houston podiatrist, alleges misconduct by Linda Hargrove, the office manager at his medical practice from 2006 to the early summer of 2009. Hargrove's duties included opening checks made payable to Ross and "restrictively endors[ing] the checks for deposit only into Dr. Ross' accounts at Amegy Bank, its predecessor Southwest Bank of Texas, and Chase Bank of Texas." (Docket Entry No. 1-1 at 2). Ross alleges that Hargrove took at least 150 of these checks and deposited them in her personal account at Bank of America. Ross alleges that the Bank of America is responsible because it "systematically failed to notice that the checks Hargrove deposited clearly bore a special and restrictive endorsement to other banking institutions, were fraudulently endorsed in blank with Dr. Ross's signature, were restrictively endorsed to other accounts at other banks, or bore no endorsement at all." (*Id.* at 3).

Ross sues the Bank of America for conversion under section 3.420 of the Texas Uniform Commercial Code ("UCC"). Ross also raises a common-law claim for money had and received. The basis of both claims is that the bank improperly allowed Hargrove to deposit the checks. The

Bank of America has moved to dismiss the common-law claim, arguing that it is preempted by the UCC. (Docket Entry No. 3). Ross has responded, asserting that there is no conflict between the common-law claim and the UCC. (Docket Entry No. 8). The Bank of America has replied. (Docket Entry No. 9).

## II.     Analysis

A claim for money had and received is an equitable theory under which a bank that "accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery." *Peerless Ins. Co. v. Texas Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1179 (5th Cir. 1986) (quotations omitted). The issue is whether Ross's claim for money had and received is preempted by the Texas Uniform Commercial Code ("UCC").

Texas adopted Revised Article 3 of the UCC in 1996. Revised Article 3 was intended: "(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions." TEX. BUS. & COM. CODE § 1.103(a). The UCC must be "liberally construed" and applied to promote these underlying purposes. *Id.*

"The UCC contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships." *Southwest Bank v. Information Support Concepts, Inc.*, 149 S.W.3d 104, 107 (Tex. 2004). It is a "general act intended as a unified coverage of its subject

matter." TEX. BUS. & COM. CODE § 1.104; *see also* TEX. BUS. & COM. CODE § 1.104 cmt. 1 ("The Uniform Commercial Code, carefully integrated and intended as a uniform codification of permanent character covering an entire "field" of law, is to be regarded as particularly resistant to implied repeal.").

Although the Texas UCC covers the field of negotiable instruments law, it does not eliminate all other sources of law. "Unless displaced by the particular provisions of [the UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." TEX. BUS. & COM. CODE § 1.103(b). If Ross's claim for money had and received is not "displaced" by a UCC provision, the claim is not preempted.

The relevant Texas UCC provision is section 3.420, which creates a claim for conversion against a bank that improperly honors a negotiable instrument. Section 3.420 provides in full:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by:
>
>> (1) the issuer or acceptor of the instrument; or
>>
>> (2) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
>
> (b) In an action under Subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

3

> (c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

TEX. BUS. & COM. CODE § 3.420.

In 1986, the Fifth Circuit held that the previous version of this provision, section 3.419 of the former UCC, did not preempt a claim for money had and received. *Peerless*, 791 F.2d at 1180-81. The court reached that result by relying on *Bryan v. Citizens National Bank in Abeline*, 628 S.W.2d 761 (Tex. 1982). In *Bryan*, the Texas Supreme Court considered a bank's common-law claim for restitution of funds it had mistakenly paid on a check subject to a stop-payment order. The Supreme Court held that the restitution claim was not preempted by the UCC provision requiring a bank to assert any defenses the check-drawer of the check might have against the payee to prevail on a restitution claim. A common-law restitution claim did not require the bank to assert such defenses. The Supreme Court held that the UCC provision was "not the bank's exclusive remedy" and that the "bank may recover restitution for funds paid by mistake." *Id.* at 762. But the court modified the common-law restitution claim to fit the UCC's requirements, holding that "the bank may recover restitution only to the extent it alleges and proves that the drawer had a defense to the check." *Id.* The common-law "right can only continue in a form that does not conflict with Code provisions." *Id.* at 764.

In applying *Bryan* to the *Peerless* case, the Fifth Circuit did not hold that the UCC preempted state common law whenever "any inconsistencies and conflicts provide a license to throw the clean baby out with the dirty bathwater." *Peerless*, 791 F.2d at 1180. Nor did the Fifth Circuit limit the preemptive effect of the UCC to instances when it explicitly displaced a common-law action.

4

Instead, the court held that under *Bryan*, "any inconsistencies between the various elements of the common law action and the particular provisions of the code [must] be resolved in the Code's favor." *Id.* A common-law claim inconsistent with, but not displaced by, the UCC could survive by modifying the claim to include restrictions in the relevant UCC provisions. Applying the *Bryan* holding to former section 3.419, the Fifth Circuit could "discern no meaningful conflicts or inconsistencies between a UCC action for conversion and a common law action for money had and received other than those of the type present in *Bryan*." *Peerless*, 791 F.2d at 1180. The only differences between section 3.419 and the common-law action were that different statutes of limitations applied and the UCC provided two defenses not available in a common-law action for money had and received. Finding these differences similar to those present in *Bryan*, the *Peerless* court held that the UCC did not displace a claim for money had and received. Instead, the claim had to be modified to "accommodate the additional defenses provided by the Code." *Id.*

After analyzing the issue under *Bryan*, the *Peerless* court considered and rejected other arguments that the UCC had displaced actions for money had and received. The court found "[t]he clearest evidence that common law actions for payment on forged instruments survived the passage of § 3.419 is in the language of . . . [s]ubsection c, [which] speaks of liability 'in conversion *or otherwise*.'" *Id.* at 1181 (emphasis added by *Peerless* court). Citing opinions by the New York Court of Appeals and the Supreme Court of Colorado for the proposition that the phrase "or otherwise" would be superfluous if section 3.419 preempted all common-law causes of action, the Fifth Circuit found this reasoning persuasive and concluded that the Texas Supreme Court would adopt it as well. *Id.*

The Bank of America argues that *Peerless* is not binding in this case—and that the common-law claim is completely preempted—because *Peerless* was based on the former version of the UCC. The Bank of America also emphasizes the Texas Supreme Court's decision in *Southwest Bank*, clarifying that the revised UCC was intended to achieve national uniformity in commercial law.

The parties have not cited, and this court has not found, a post-revision Texas case directly addressing preemption of a claim for money had and received. Texas courts have, however, considered similar preemption issues involving revised section 3.240. *See AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 207-08 (Tex. App.–Houston [1st Dist.] 2006, pet. denied); *Mazon Associates, Inc. v. Comerica Bank*, 195 S.W.3d 800, 804-06 (Tex. App.–Dallas 2006, no pet.). In *AMX*, the plaintiff sought to recover loss-of-use damages in addition to the value of a check that the defendant bank had improperly accepted. Section 3.420 limits a plaintiff's recovery to his interest in the instrument. The court rejected the plaintiff's argument that section 3.420 allowed recovery of the common-law damages. The court held that "any common law theory of recovery that allows a plaintiff to exceed the maximum amount of liability as stated in section 3.420 is preempted." *Id.* at 207. Similarly, the *Mazon Associates* court held that revised section 3.420 preempted common-law conversion claims brought by parties who had not received "delivery" of the check, because such parties were ineligible to bring such clams under the UCC. 195 S.W.3d at 804-06.

The *AMX* and *Mazon Associates* holdings relied in part on a comment to the revised UCC. The comment states:

> [W]hile principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform

>Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

TEX. BUS. & COM. CODE § 1.103 cmt. 2 (emphasis in original). Although the revisions did not change the text of section 1.103, the prior version did not include this comment. *See* TEX. BUS. & COM. CODE § 1.103 (West 1994).

*AMX*, *Mazon Associates*, and the above comment restate the rule in *Bryan* and *Peerless*. *See* TEX. BUS. & COM. CODE § 1.103 cmt. 2; *AMX*, 196 S.W.3d at 207-08; *Mazon Associates*, 195 S.W.3d at 804-06 (citing *Bryan* for the rule that "[c]ommon law claims exist only to the extent they do not conflict with code provisions."). The comment makes clear that the revised UCC does not command a different result than the Fifth Circuit reached in *Peerless*. To the contrary, the comment confirms that *Peerless* would have been correctly decided under the revised UCC. Section 3.420 does not eliminate the common-law claim for money had and received. But such a claim must be modified to incorporate any limits set in the UCC.[1]

Revised section 3.420 contains three limits on actions alleging conversion of negotiable instruments. Such an action may not be brought by "the issuer or acceptor of the instrument." Nor may it be brought by "a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee," which was the issue in *Mazon Associates*. And, as was relevant in *AMX*, the plaintiff's recovery is limited to his interest in the instrument. TEX. BUS. & COM. CODE § 3.420.

---

[1] Unlike the prior section 3.419, revised section 3.420 does not speak of liability "in conversion *or otherwise*." The words "or otherwise" have been removed. This does not change the analysis. The revised UCC contemplates that actions for money had and received will be available. Section 3.118(g) specifically provides that such claims are subject to a three-year statute of limitations. The goals of the UCC can be accomplished by tailoring inconsistent common-law remedies to meet the UCC requirements.

The first two limits are not relevant to Ross's claim. He was not the issuer or acceptor of the checks. Instead, he was the payee. Ross received delivery of the checks at his office, via his agent Hargrove. The third limit applies to restrict Ross's claim to the amounts due under the checks Hargrove deposited at the Bank of America. The cause of action is not preempted and need not be dismissed.[2] Instead, it remains part of the case but does not provide a basis for recovering more than the face amounts of the checks.

The Bank of America's motion to dismiss is denied.

SIGNED on February 16, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[2] The Bank of America has cited to out-of-state cases in which courts have dismissed claims for money had and received after finding them displaced by the revised UCC. Two of these cases are from Ohio. *See Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 581-82 (N.D. Ohio 2006) (the three purposes of the revised UCC "cannot be served if parties can avoid the requirements of the UCC by pleading common law causes of action along with their UCC claims for the same alleged transgressions."); *Lloyd v. Huntington Nat'l Bank*, No. 1:08-cv-2301, 2009 WL 1767585, at *4 (N.D. Ohio June 18, 2009) (stating the rule from *Metz*). There is no need to dismiss Ross's common-law claim in order to ensure that the purposes of the UCC are met. Tailoring the claim to satisfy UCC requirements is sufficient, and is the method preferred by Texas courts. *See AMX*, 196 S.W.3d at 207-08; *Mazon Associates*, 195 S.W.3d at 804-06. Another case cited by the Bank of America, *Citizens Bank of Pennsylvania v. Chevy Chase Bank*, No. 03-cv-5208, 2004 WL 875499, at *2-3 (E.D. Pa. March 22, 2004), found that the plaintiff's claim for money had and received was displaced by a UCC breach of warranty provision. This result was based on the nature of the parties before the court: the plaintiff was the drawee/issuer bank and the defendant was the depositary bank. *Id.* The court also dismissed the plaintiff's common-law conversion action because section 3420 of the Pennsylvania UCC (identical to Texas section 3.420) did not permit claims by issuers. *Id.* An earlier Pennsylvania case, *Gress v. PNC Bank, Nat'l Ass'n*, 100 F. Supp. 2d 289, 291-92 (E.D. Pa. 2000), had reached a similar result in dismissing a negligence claim, finding that the plaintiff could not pursue it because section 3420 only allowed actions by persons "entitled to enforce the instrument.." It appears that the Pennsylvania cases have adopted an approach like that in *Bryan* and *Peerless*, dismissing not because the common-law claims were per se preempted but because the plaintiffs were not proper plaintiffs under the UCC. These cases are consistent with the Texas courts' understanding of the relationship between section 3.420 and common-law claims.